IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00308-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MARY CATHERINE GRASMICK,**

    Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

    For years, the defendant cheated to win lucrative government contracts. During that time, she stole valuable opportunities away from honest businesses that followed the rules.  When she got caught, she lied to investigators and created fake documents to avoid taking responsibility.  As part of a plea agreement in which the government agreed to pursue no additional counts, the defendant pleaded guilty on September 5, 2019 to an Information charging her with falsifying documents in a Federal investigation in violation of 18 U.S.C. § 1519.  ECF No. 16.  Sentencing in this matter is set for December 17, 2019 at 1:30 p.m.

    In advance of the sentencing hearing, the United States of America, by Jason R. Dunn, United States Attorney for the District of Colorado, through Bryan David Fields, Assistant United States Attorney, hereby files this sentencing statement pursuant to D.COLO.L.CrR 32.1 identifying and analyzing the relevant sentencing factors.  The government recommends a sentence of one year and one day (the

1

"Recommended Sentence").  For the reasons set forth below the Recommended Sentence is sufficient but not greater than necessary to satisfy all of the factors the court must consider under 18 U.S.C. § 3553(a).[1]

## I. ALL OF THE FACTORS THAT THE COURT MUST CONSIDER SUPPORT THE RECOMMENDED SENTENCE

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including (1) the kinds of sentences and the range established by the United States Sentencing Guidelines (the "Guidelines"), (2) the nature, circumstances, and seriousness of the offense, (3) the need to promote respect for the law, (4) the need to justly punish the offense, (5) the need to adequately deter criminal conduct and protect the public from further crimes, and (6) the history and characteristics of the defendant.  Almost all of these factors support a sentence at the high end of the Guidelines Range.  However the last factor does provide a mitigating influence that, when balanced against the other factors, supports the Recommended Sentence at the lower end of the Guideline Range.

### A. The Recommended Sentence is Supported by the Guidelines (18 U.S.C. § 3553(a)(4))

One of the factors the Court must consider is the range recommended by the Guidelines. The plea agreement between the parties sets forth the relevant Guidelines calculation.  ECF No. 16. The defendant has no criminal history, which

---

[1] Prisoners are only eligible for "good time" credit if they have a sentence of more than one year.  18 U.S.C. 3624(b).  The statute provides for 54 days of credit for each year of the prisoner's term.  This means that a sentence of 12 months and one day is potentially only slightly longer than a sentence at the very bottom of the guideline range.

puts her in Criminal History Category I.  In that category, an offense level of 12 yields a recommended Guidelines Range of 10-16 months' imprisonment.[2]  At this offense level, the Guidelines authorize a split sentence that would involve a shorter period of imprisonment, followed by supervised release with a condition that substitutes community confinement or home detention.  U.S.S.G. § 5C1.1.  The Recommended Sentence takes into account this possibility, but for the reasons set forth below also reflects the view that allowing the defendant to serve part of her term at home would undermine other important § 3553(a) factors such as the need for the sentence to reflect the nature and circumstances of the offense, to promote respect for the law and to adequately deter criminal conduct.  A full prison term of one year and one day would fully vindicate these factors, while being similarly consistent with the Guidelines.

The Guidelines Range provides a useful framework for evaluating all of the other factors together because it provides a "rough approximation" of sentences that will achieve all of § 3553's objectives.  *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  As set forth in more detail below this conclusion is not an abstract or academic one:  the particular facts of this case, viewed through the prism of § 3553(a) fully support a Guidelines

---

[2] This calculation assumes that the defendant accepts responsibility for her conduct.  If she takes actions before sentencing that are not consistent with acceptance of responsibility, such as by falsely denying any relevant conduct, then the offense level would be 14 and the Guidelines Range would be 15-21 months.  U.S.S.G. § 3E1.1 Application Note 1(A).

sentence.

> **B.  The Nature of a Serious Crime that Corrupts a Government Program and Circumstances Like the Prolonged Nature of the Criminal Conduct and the Defendant's Active Efforts to Encourage Others to Aid the Crime Justify the Recommended Sentence (§§ 3553(a)(1) and 2(A))**

The defendant's obstruction was the culmination of a long and increasingly elaborate exercise in deception. For a period of at least three years, she actively sought to deceive the Small Business Administration ("SBA") so that she could take advantage of all of the benefits of the HUBZone program — set-aside contracts and a pricing preference — without the burdens that come with actively recruiting and maintaining a workforce from economically disadvantaged communities. This was not an anomaly or a "one off." Every time the defendant was presented with the choice to do the honest thing — to make full disclosures to the SBA and otherwise come clean about the fact that her business did not qualify for the HUBZone program — she made the conscious criminal decision to make false and misleading statements. When that didn't seem like it would be enough she went even further by creating fake documents to support the lies and even asking others to engage in deception on her behalf. The defendant actively and intentionally created a criminogenic environment that corrupted the bidding process, her employees, and even her own family. Dishonesty was central to the defendant's business for years:

- The defendant's company, MASS Service and Supply ("MASS") was up for recertification in the HUBZone program in 2009. To qualify, at least 35% of its employees needed to come from economically disadvantaged HUBZone areas. MASS had too many employees outside of those areas. Instead of being truthful and admitting this, the defendant simply moved employees from her company to other

4

companies in an effort to manipulate the mix of employees on her books to get the magic number. Then she falsely certified that her company was compliant.

- In an effort to hide this ruse, the defendant exploited her status as an employer by asking employees to create documents supporting her lies. In 2009, she asked her office manager, Angela Petersen, to help her get an employee to sign a form that would make it appear the employee lived in a HUBZone when she did not, fraudulently backdating the form to make it appear more legitimate.  The defendant also asked that same employee to falsely change an address on her driver's license, again to make her lie more believable.

- MASS was up for HUZone recertification again in 2011; once again, it didn't have the necessary number of HUBZone employees. Instead of admitting this, the defendant made the same criminal choice she had made in 2009.  She chose, again, to falsely certify that her company qualified for the HUBZone program.  But in 2011 the problem was worse than in 2009 so the defendant had to do even more to make her ruse successful.

    o   The defendant brought her own daughter into the scheme. Despite the fact that her daughter was a full time student in Denver living in various luxury apartment complexes, the defendant told the SBA that her daughter worked for MASS forty hours a week and that she lived in MASS's office in a HUBzone.  The defendant later downloaded model leases from the internet, told her daughter to sign them, and then asked an employee who was a notary to fraudulently backdate them.

    o   To give herself more flexibility in moving employees on or off MASS's payroll, the defendant created a sham staffing company, purportedly owned by her daughter, and then transferred her non-HUBZone employees to that staffing company.

    o   The defendant falsely told the SBA that her personal housekeepers (a husband and wife who already had full-time jobs working for the government) — who did live in a HUBZone — were actually employees of the company who each worked the forty hours a month necessary to make them qualified HUBZone employees.

    o   The defendant and her office manager asked an employee to sign a sham lease with a friend so that the defendant could

5

> fraudulently represent that the employee lived in a HUBZone.
>
> o   The defendant represented that her office manager lived in a HUBZone in Aurora instead of in Pueblo and, as with other employees, had the office manager obtain a sham lease to support the false representation.

- When the SBA asked for more information to support MASS's certification, the defendant did not ask for more information about the HUBZone program or candidly engage with the SBA about the difficulties of maintaining HUBZone status.  Instead, given yet another opportunity to do the right thing she did the opposite by submitting falsified records that purported to show certain employees lived in a HUBZone or worked the required number of hours for MASS each month when she knew they did not.

- The defendant leveraged the lies she told the SBA so that she could use the HUBZone program's benefits to cheat competitors out of contracting opportunities.  As a result of the 10% pricing preference given to HUBZone participants, the defendant was awarded an approximately $48 million dollar contract to build the Colorado Army National Guard's Regional Training Institute over other competitors who honestly represented their status.  And as a result of the contracting set-asides given to HUBZone participants, the defendant was able to obtain an approximately $150,000 contract to renovate a bathroom.

- In 2012 the defendant had another opportunity to be honest with the SBA.  That year, the SBA notified her that she would be decertified as a HUBZone participant.  Instead of finally admitting that her company was not qualified, the defendant chose to try new methods of deceit.  In protesting that decision, the defendant used two of her employees to lie for her, drafting and submitting affidavits in which the employees falsely stated that they lived in a HUBZone.

- Finally, as outlined in the plea agreement, even an approach by criminal investigators did not deter the defendant from making false statements.  Given one final chance to tell the truth, she chose dishonesty, once again using an employee to help her try to deceive the government.

The defendant's choices were not difficult ones arising from some type of moral, ethical, or professional dilemma.  She was a businesswoman who confronted

the same challenges faced by countless other small businesses — tough markets, staffing difficulties, and stiff competition — who made a conscious decision to give herself an unfair advantage over honest competitors by fraudulently representing herself to be a HUBZone business. Nor were her criminal choices the product of crippling necessity. Throughout this period the defendant lived in upper-middle-class comfort, using income from the business to pay for expensive private schools, investments in real estate, and vacations for her daughter. This was a crime of choice.

The court should also consider the nature of the defendant's crime. The defendant corrupted a government program intended to help alleviate blight in some of the most disadvantaged communities in Colorado. The defendant's conduct caused the United States to provide several million dollars in subsidies to her company without obtaining the program's benefits. The defendant's crime also perpetuates cynicism about government contracting that encourages more crime. If people feel like deception is the only way to win then competitive temptations will only make criminal conduct more pervasive.

The nature and circumstances of the defendant's crime are serious. This factor weighs heavily in favor of imprisonment.

### C. The Recommended Sentence Would Promote Respect for the Law and Justly Punish the Offense (18 U.S.C. § 3553(a)(2)(A))

The defendant's conduct demonstrates a profound disrespect for the law. Every day many small business owners struggle with the demands imposed upon them by governments. Most, however, understand their duty and try to operate

7

fairly. The defendant did not. She treated the law as something to be overcome by tricks and deception. She treated law enforcement the same way. These are the actions of a person who does not believe that the rules apply to her. The sentence should be stiff enough to remind her, and others, that the law deserves respect. As noted above, this was a crime of choice. Those choices should have consequences.

The Recommended Sentence would also be a just one. The defendant engaged in a systematic and deliberate effort to corrupt the bidding process and avoid detection so that she could obtain lucrative government contracts. Along the way she corrupted her daughter and several employees. The Recommended Sentence is proportional to her conduct.

### D. The Recommended Sentence Would Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2)(B))

General deterrence supports the Recommend Sentence. "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). This defendant calculated that the rewards of deceit — the HUBZone certification and all of its benefits — outweighed the potential costs, especially when such costs are discounted by the likelihood of getting caught (a discount the defendant sought to deepen through her obstructive conduct). Unfortunately, the HUBZone program has been a frequent target of those seeking criminal opportunities. *See* Government Accountability Office, HUBZone Program Fraud and Abuse Identified in Four Metropolitan Areas, www.gao.gov/assets/290/287562.pdf (noting that "numerous ineligible firms have

8

taken advantage of the opportunity to commit fraud against the federal government). The sentence in this case must be enough to show other would-be HUBZone fraudsters that the consequences of such deception are serious enough to reconsider.

Specific deterrence also supports the Recommend Sentence. While the defendant does not have a criminal history, the conduct described above shows that she is the sort of person who makes criminal choices if she believes that she will not get caught or if she believes that she can trick her way out of responsibility. The sentence in this case should be stern enough to lessen the future temptation of any effort to obtain an unfair business advantage.

### E. The Defendant's History and Characteristics Weigh In Favor of a Sentence on the Lower End of the Guidelines But Should Not Be Given Outsize Influence

After years of making bad choices, the defendant finally did the right thing, admitted to defrauding the HUBZone program, and pleaded guilty to the charged crime. She has no criminal history. She is fortunate to have a supportive network of family, friends, and neighbors. Outside the competitive pressures of business, she appears to be otherwise law-abiding. These are all characteristics supporting the Recommend Sentence, which is at the low end of the recommend Guidelines Range.

While this factor does support a lesser sentence, it should not be given outsize influence. The defendant should not receive a white-collar discount. The fact that the defendant has no criminal history and immense social capital is true of most

9

defendants convicted of crimes involving the mendacious pursuit of more money. Using these as justifications for an even lower sentence would in effect mean that upper-middle-class professionals — simply because of characteristics they generally share as a class — receive lower sentences than others who do not have such advantages. Such an outcome would be improper or unjust for several reasons.

First, the sentencing statute, 18 U.S.C. § 3553(a) directs the court to consider whether the *sentence* imposed satisfies certain goals. Reputational harms and professional sanctions are not the sentence (though they are may be collateral consequences of it). Relying on them to lower a sentence is thus improper. *See, e.g., United States v. Morgan*, 635 F. App'x 423, 444 (10th Cir. 2015) (reversing sentence, in part, based on procedural error in relying on such collateral consequences and citing numerous Courts of Appeals expressing a dim view of such rationales because they "impermissibly favor criminals . . . with privileged backgrounds"); *see also United States v. Peppel*, 707 F.3d 627, 636 (6th Cir. 2013) (explaining that a lesser sentence based on "humiliation before his community, neighbors, and friends — would tend to support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along those lines.") (citation omitted).

Second, the Guidelines were created, in part, to help address the concern that white-collar offenders received special treatment and "frequently do not receive sentences that reflect the seriousness of their offenses." S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3260. A sentence outside the Guidelines range would create disparities with other types of offenders that would simply

reinforce this perception of special treatment and thus undermine deterrence and respect for the law, which is contrary to § 3553(a). *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) ("The Sentencing Guidelines authorize no special sentencing discounts on account of economic or social status."); *United States v. D'Amico*, 496 F.3d 95, 107 (1st Cir. 2007) (explaining that lower sentences for white collar criminals contradicts purpose of Guidelines), *reversed on other grounds*, *D'Amico v. United States*, 522 U.S. 1173 (2008).

Third, while the defendant has no criminal history, this fact alone does not warrant a lesser sentence. The Guidelines already take it into account.

Fourth, the defendant's privileges as a successful businesswoman with a position of responsibility over her employees *more* culpable, not less.[3] "Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

## II. CONCLUSION

The defendant's crime was corrosive to government programs, her employees

---

[3] The defendant's office manager, Angela Petersen, has also been charged with crimes arising from MASS's deception of the SBA. *United States v. Petersen*, 19-cr-354-RM. The government is recommending a sentence of probation in her case, which is within her estimated Guidelines Range. Imposing the recommended sentence in this case, while Petersen potentially receives a lesser sentence in her case would not create *unwarranted* sentencing disparities. U.S.S.G. § 3553(a)(6). The disparity is warranted because the defendant was Petersen's boss, the defendant led and directed the dishonesty, and the defendant received almost all the benefits of it.

11

and family, and to the government's investigation.  It is one thing to lie, cheat and steal.  It's another, even more serious thing, to do all of that once and then, when confronted, keep doing it over and over again until there are no other options.  The defendant should receive a sentence that advances the purposes of criminal sentencing set forth in § 3553(a).  For all of the reasons set forth above, the Recommended Sentence does so without being greater than necessary.

Respectfully submitted this 3rd day of December, 2019.

                         JASON R. DUNN
                         United States Attorney
                         District of Colorado

By:   s/ *Bryan David Fields*
       BRYAN DAVID FIELDS
       Assistant United States Attorney
       1801 California Street, Suite 1600
       Denver, CO 80202
       Telephone 303-454-0100
       Facsimile 303-454-0402
       Bryan.Fields3@usdoj.gov

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

        I certify that on this 3rd day of December 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

        s/ *Bryan David Fields*
        BRYAN DAVID FIELDS
        Assistant United States Attorney
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Bryan.Fields3@usdoj.gov