## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00308-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARY CATHERINE GRASMICK,

Defendant.

---

### DEFENDANT GRASMICK'S SENTENCING STATEMENT AND INCORPORATED RESPONSE TO GOVERNMENT'S SENTENCING STATEMENT

---

Defendant Mary Catherine Grasmick (hereafter Mrs. Grasmick), by and through undersigned counsel, hereby files her Sentencing Statement analyzing the sentencing factors to be considered at her sentencing presently scheduled for Tuesday, December 17, 2019. Mrs. Grasmick responds herein as well to the Government's Sentencing Statement and, for reasons set forth herein, opposes the Government's sentencing factors analysis in support of its ultimate sentencing recommendation.  For reasons which follow, the statutory sentencing factors set forth under 18 U.S.C. § 3553(a), when properly weighed, demonstrate that the sentence which is sufficient but not greater than necessary to satisfy the purposes of sentencing in this case is a three-year probationary sentence, as recommended by the U.S. Probation Office, and not the one-year-plus imprisonment sentence advocated by the Government in its sentencing statement.

### INTRODUCTION

Mrs. Grasmick, who will stand before you to be sentenced, surely provides a unique contrast to the typical first-time offender. She is a self-made woman who grew

up on a farm in Grenada, Colorado, and after the premature death of her mother to cancer, excelled in school, provided motherly care at an all-too-young age for her younger sister, as her four older brothers no longer resided in the family home. Moreover, in a field dominated by men, Mrs. Grasmick built a successful and well-respected contracting business in a depressed area of Pueblo, Colorado.  Since 1996 she, and her company, have completed contracts for hundreds of construction projects in and around the State of Colorado. These construction projects, while not always profitable, were always completed satisfactorily. Her reputation was well earned. Until the contract at issue she was never cited for any material deficiencies. Even still, with respect to the Government contract at issue, the United States suffered no discernable loss.

Moreover, as the letters attached to Mrs. Grasmick's Sentencing Statement make clear, she not only had a reputation as an ethical and reliable business leader and construction contractor, Mrs. Grasmick was as law-abiding and valuable, member of her community. Perhaps most clear from the letters attached to her Statement of Offense is that Mrs. Grasmick was a thoughtful, caring and doting mother. The stresses and demands of caring for two daughters suffering from extremely serious medical conditions over an extended time period, while  running a viable and time-consuming construction company, would be emotionally daunting for anyone; yet Mrs. Grasmick always seemed to be there when friends, children and their schools needed her. They still need her. Mrs. Grasmick has paid a steep price. She has lost her business, her life savings and her reputation. She won't, however, let go of her dignity, as evidenced by doing the right thing and admitting her crime. If there is ever a case where incarceration

is unwarranted, this is surely it.

## I.   OVERVIEW OF SENTENCING FACTORS

When determining the sentence for Mrs. Grasmick, 18 U.S.C. § 3553(a) requires the Court to consider the nature of the offense and the history and characteristics of Mrs. Grasmick. The court, in imposition of the sentence, should further consider the need to: 1) reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense; 2) afford adequate deterrence; and 3) protect the public from further crimes. After fairly considering and applying these factors to the facts before it, the Probation Office recommended that the Court impose a sentence of 3 years' probation to be served by Mrs. Grasmick. As set forth and reflected in  her Motion for Variance and Departure (ECF No. 26), counsel for Mrs. Grasmick agrees that imposition of a sentence of 3 years of probation adequately considers the §3553(a) factors as set forth in detail below.  Imposition of a sentence of probation would represent a minor departure from the prescribed minimum guideline sentence of 5 months incarceration calculated for this case.[1] Such a probationary sentence is warranted here because of the special and unique factors and circumstances, as set forth by the Probation Office (ECF No. 18-1 Ex. A) and elaborated upon further below, that are present in this case.

## II.   MRS. GRASMICK'S LONG HISTORY OF ETHICAL BUSINESS PRACTICES

Mrs. Grasmick, a longtime female business leader in her community, grew up on

---

[1] The Presentence Investigation Report (PSIR) calculates the sentencing guideline range as being 10 to 16 months, based on a total offense level of 12 and a criminal history category of I (ECF No. 24 at ¶103).  The PSIR acknowledges that this range falls within Zone C of the Sentencing Table, however, thereby permitting the minimum guideline term to be satisfied by a "split-sentence" that substitutes community confinement or home detention for up to one-half of the minimum term (*id.*). See U.S.S.G. § 5C1.1(d).

a farm in Granada, Colorado with 5 older brothers and one younger sister. When her young mother died from cancer while she was in high school, Mrs. Grasmick assumed her mother's mantle and helped raise her younger sister, as her brothers no longer resided in the home. As a completely self-made woman, Mrs. Grasmick entered the demanding world of construction contracting (then, as now, dominated by men) in 1996 and performed over 260 construction projects. During this time frame, two of Mrs. Grasmick's three daughters were beset with significant and life-threatening medical issues that occupied a significant portion of her attention while she tackled the demands of her business. During this time, Mrs. Grasmick never missed a school event for any of her children.

Mrs. Grasmick also created a business that actually served here community. By building her company's facilities in a depressed and economically underserved area of Pueblo, Mrs. Grasmick put her money where her mouth was and actually sought to be the catalyst for revitalizing that area of town. The attached photos of the facility demonstrate this dramatically.[2]

For the nearly 20 years prior to the contract at issue and the illnesses of her children, neither Mrs. Grasmick nor her company had ever had a significant problem or issue with regard to the projects the company had bid upon, won and performed. During that period, the company had fully performed the aforementioned 260 construction contracts.[3]  In fact, Mrs. Grasmick and her company consistently received high ratings

---

[2] See Photos of the company facilities attached hereto as Ex. A.

[3] *See* Table of Executed Contracts attached hereto as Ex. B. The color codes in the chart indicate only two HUBZone Preference contracts(marked in yellow)- one in 2006 and the COANG-RTI contract in 2009. There were two HUBZone IDIQ's(marked in orange) – one in 2006 (with 4 task orders for a total of $200k) and the other in 2008 (best value with one task order for which they received an outstanding performance evaluation). Finally, there were two small HUBZone contracts awarded in 2012 Z -- one competitive/one not competitive. To the extent

for performance on these construction projects.

In 2011, Mrs. Grasmick and her company were awarded an Historically Underutilized Business Zone (HUBZone) "best value" contract with a price preference to construct a Regional Training Institute (RTI) by the Colorado Army National Guard (COANG).[4] She and her company, however, were not eligible for that contract award because the company did not have enough HUBZone eligible employees both at the time of the contract bid and when awarded.[5] Mrs. Grasmick simply did not allocate sufficient resources to maintain compliance with the ever-changing HUB-Zone residency requirements. The COANG-RTI contract, however, was completed and that COANG accepted the building without reservation, waiver or caveat.  Mrs. Grasmick's company constructed the building in accordance with applicable specifications and drawings and that is the basis upon which the Government accepted the building, took possession of the building and has been occupying the building ever since.  As such, Mrs. Grasmick's record of successfully completing Government contracts was exceptional, as will be confirmed by several witnesses who have submitted letters on

---

relevant, those additional HUBZone contracts will be discussed in Section III *infra*.

[4] See attached June 13, 2013 letter from Mark A. Schoenrock, Chief of Contracting of Colorado National Guard, confirming the COANG-RTI project contract was "proving to be a success" and that the contract award for "best value reasons, price, technical and past performance." (Ex. C hereto).

[5] As will be discussed in detail at Sentencing, the HUBZone rules have changed over time in an attempt to address the practical realities related to the goals of the program. For example, prior to 2009, the residency requirements were much more contactor friendly and relaxed. In  2009, however, the SBA changed certain rules bearing upon contractor eligibility under the HUBZone program rules, making it more difficult for contractors to achieve and maintain eligibility under that Program. That rule change (that went into effect in May of 2010) enhanced the definition of a "full time employee," directly affecting the HUBZone recertification process for Mrs. Grasmick's company. Finally, less than one month ago, on November 26, 2019, new rules again went into effect. These new "contractor favorable" rules again alter the definition of  "full time" employee. No longer must a contractor certify at the time of bid and award (the issue in the violations which led to the Civil Settlement herein). A HUBZone certification in now good for the 12 months no matter how many bids or awards the company participates in. This new rule is much more "contractor favorable" than the rules in place during the time period relevant to the Civil Settlement, as it requires that the company maintain a 20% HUBZone residency level as *prima facie* evidence that it is attempting in good faith to maintain a 35% residency requirement. See 13 CFR 126.103.

her behalf, some of whom are expected to testify on her behalf at sentencing. The PSIR further sets forth the nature of the Civil Settlement as it relates to Mrs. Grasmick's non-compliance with HUBZone regulations and the relevant contracts. The nature and degree of those regulatory violations have been fully addressed in the Civil Settlement.

## III.    THE ABSENCE OF LOSS

As set forth above, for the same reason that COANG concluded that the superior offer was worth the premium over the lower priced offers, COANG apparently concluded that the savings that would result from the lower rated, lower priced offers was NOT worth the risk of accepting the lower rated proposal.  The following source selection factors, as identified by the Government, however, are relevant to the consideration of the sentencing factors as they may apply to this matter:

- The COANG-RTI procurement was conducted as a full and open competition with a HUBZone evaluation preference to be applied in the event that a HUBZone offeror submitted an offer.  By application of that preference, the Government escalated for evaluation purposes only the offered price of any offerors that were not HUBZone entities.
- Importantly, COANG assigned the highest overall evaluation ratings to the offer submitted by Mrs. Grasmick's company.
- The selection criteria for award was to be best value, and not lowest price, meaning that the Government was not obligated to award the contract to the lowest price offeror – it could have, but it was not obligated to do so.  This is a critical fact.
- Most important, COANG was not obligated to award the contract to a HUBZone offeror, notwithstanding the 10% preference evaluation, even if the HUBZone entity offered the lowest price.  Nor was the Government obligated to award the contract to any other offeror who may have offered a lower price.  COANG was, however, obligated to award the contract to the offeror whose proposal represented the best value to the Government.
- In the source selection memorandum, the source selection authority (SSA) made it abundantly clear that Mrs. Grasmick's company presented the highest rated proposal and no other offeror was evaluated as superior, equivalent or even relatively close.
- The non-price evaluation factors were individually and collectively more important than the price offered, meaning that COANG placed greater weight on technical and past-performance factors and lesser weight on price.

Therefore, the Government concluded that the offer from Mrs. Grasmick's company represented the best value to COANG – that is, (1) the technical superiority of the offer was worth the price premium relative to each of the other offers and (2) the actual cost savings that would have resulted from award to another offeror was not worth the risk of selecting a lower ranked offeror.[6] ***In other words, the selection result would have been the same even without application of the HUBZone evaluation preference.*** The source selection memorandum supports no other conclusion. Accordingly, there was no discernable loss to the Government by virtue of Mrs. Grasmick's complete performance under the COANG-RTI contract.[7]

As noted above, Mrs. Grasmick and her company were awarded several other HUBZone Contacts. None of those contracts resulted in loses to the Government. The contracting process for those contracts is outlined below.

### a.    GSA Contract – Renovate 2x Bathrooms

In its Sentencing Statement, the Government further complains regarding a bathroom contract set aside at the COANG-RTI project. This GSA contract was awarded February 23, 2102 as a HUBZone set-aside in the amount of $131,979 for renovation of two bathrooms.  According to the Request for Proposal (RFP), the award was made on the basis of best value, with non-price factors weighted more heavily (more important) than price.  The contract was modified at various times to increase the

---

[6] *See generally* FAR 15.302, 15.304(b), (e), and 15.308

[7] Indeed, Mrs. Grasmick's company did not seek to recover its increased costs of performance, opting instead to learn from its experience and to continue building on the goodwill earned over the many years working with the Government.

amount of work and the total contract price increased to $142,071.42.

For this solicitation, the source selection memorandum provided by the government establishes that Mrs. Grasmick's company provided the most highly rated offer at the lowest price.  The next closest offeror considered for award was  a Colorado Springs company that was $5,175 *higher*.  Given Mrs. Grasmick's company's highest rating, lowest price, and prior experience doing the same kind of renovations in the very same building, the Government awarded the contract to Mrs. Grasmick's company.

There is no evidence indicating that the Government valued the improvements provided by Mrs. Grasmick's company at less than what was agreed to in the contract. What's more, by awarding the contract to Mrs. Grasmick's company, the Government actually saved at least $5,175 over the next closest offeror.  Accordingly, and despite any alleged misconduct associated with capturing that HUBZone award, the Government suffered no legally cognizable loss and no actual damages.

It should not go unnoticed by the Court that while Mrs. Grasmick's guilty plea certainly evidences her contrition and remorse for the criminal conduct, it is virtually unprecedented, at least in the criminal Government contracting sphere, that a criminal prosecution would be mounted – no less an imprisonment sentence imposed -- when a defendant's criminal conduct resulted in no pecuniary loss to the Government. This is yet another reasonable and valid basis to support a non-guideline sentence. *Cf.* 18 U.S.C. § 3553(a)(6)(court charged with considering the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct). The absence of a discernible pecuniary loss to the Government, alone and in in combination with the other factors cited herein, certainly warrant a

variance to a sentence of probation. *See, e.g., United States v. Prosperi*, 686 F.3d 32, 50 (1st Cir. 2012)(where, in construction project case, defendants maintained that concrete provided met or exceeded expectations and there was no government loss, substantial variance within sentencing court's discretion)("[t] he [sentencing] court explained why the estimated loss amount was an unfair proxy for culpability, and why it should not drive the sentencing process. Importantly, it also found that there was insufficient evidence to conclude that the defendants' conduct compromised the structural integrity of the Big Dig, or that they sought to enrich themselves. Coupled with the individual circumstances of the defendants, these findings provided a "plausible explanation [for the sentences], and the overall result is defensible")( further noting the numerous letters from Prosperi's family, friends, and business associates attesting to Prosperi's good character and role in the community and that Prosperi's wife suffered from a terminal cancer and that Prosperi was an important caregiver for her).

## IV.    THE FINANCIAL DEVASTATION SUFFERED BY MRS. GRASMICK

By virtue of the investigation and civil settlement, Mrs. Grasmick also agreed to pay a settlement amount of $500,000. Since this investigation, her government contracting business, the principal source of her income, has failed to generate sufficient revenue to remain viable. Mrs. Grasmick and the company are also currently subject to debarment proceedings which would prohibit them from bidding on or receiving Government contracts for a defined period. Pursuant to and in order to satisfy the Civil Settlement, Mrs. Grasmick also will now be constrained to sell the facility she built with so much enthusiasm, hope and pride. The plea agreement, the substantial civil settlement and the debarment proceedings have all then created an exceedingly

perilous and unstable financial situation for Mrs. Grasmick and her family. Both the PSIR and Mrs. Grasmick's Statement of Offense describe the significant monthly negative cash flow and enormous financial burden, with few job prospects in her chosen field, faced by Mrs. Grasmick in the years ahead. Again, as recognized by the Probation Department, this factor also supports a non-incarceration sentence.

The financial obligations in the Civil Settlement are enormously crippling. Mrs. Grasmick is indeed paying a steep price for her HUBZone procurement actions.  This economic devastation to her and her family cannot be overstated. She resides in an area of Colorado which remains economically depressed. Publicity surrounding her plea of guilty in this case has made it even more difficult for Mrs. Grasmick. Indeed, on the day of her guilty plea, the Government's inordinately one-sided press release was reprinted in its entirety on the front page of the local newspaper, causing enormously cruel stress to the defendant and her children. Nevertheless, Mrs. Grasmick has attempted to stand tall, while now being forced to publicly account for her shortcomings.[8] It is hard to paint a picture of someone facing graver economic consequences far outdistancing the economic harm she caused. This factor alone should be evaluated, considered and approved  by the Court as a sufficient basis for variance to a sentence of probation.

## V.    MRS. GRASMICK'S LIFETIME EXAMPLE OF GOOD CHARACTER

Both the plea agreement and the civil settlement also recognize that Grasmick's conduct in relation to her lifetime example of law abidedness and good works. Even a cursory reading of the more than 80 letters of support submitted by family, friends and

---

[8] The front page article from the *Pueblo Chieftan* is attached hereto as Ex. D.

business associates on her behalf will establish for the Court that the conduct which led to the charges herein is an aberration for a good life well lived. The letters reveal the real Cathy Grasmick who has lived her life in service to others and has proudly championed and earned a reputation for integrity in her 20 years of business dealings in the community.[9] These lifelong reputational testaments put the lie to the Government's callous and unsupported accusation in support of an incarceratory sentence that "she is the sort of person who makes criminal choices if she believes will not get caught or if she believes that she can trick her way out of responsibility." But for the circumstances that led to the Civil Settlement and ultimately to her guilty plea herein, Mrs. Grasmick has led an entirely and honest and exemplary live, in both her personal and business dealings. *See, e.g., United States v. Barnes*, 890 F.3d 910, 918 (10th Cir. 2018)(upholding substantial sentencing variance where sentencing court properly considered that defendant was raising extended family members, had significant health problems, and would no longer be able to work in law enforcement and would suffer ancillary consequences of felony conviction).

The more than 80 letters of support from family, friends and professional associates, some who have known Cathy for decades, put the lie to the Government's bald accusations. These good people have attested to Mrs. Grasmick's lifetime of good character, strong faith, work ethic, admirable business practices, care for family and being both a selfless friend and generally good corporate citizen and example. These astonishing and numerous testaments to her good character further lend credence to and support the recommendation of the Probation Office for a non-incarceration

---

[9] *See, e.g.,* Outstanding ranking from Department of the Army for Completion of a 2009 HUBZone Petersen AFB Renovation Contract. Ex. E hereto.

sentence. *See United States v. Jones*, 158 F.3d 492, 500–01 (10th Cir. 1998)( District court did not abuse its discretion by departing downward from Sentencing Guidelines in part due to defendant's long history of community service and strong support in community; court received 12 letters extolling his past good works and opposing his incarceration, some coming from relatives of estranged wife whose home he approached in violation of court order).

For the same reasons that Mrs. Gramick has led a lifetime of law abidedness, as recognized by the Probation Office's recommendation, there is no chance for recidivism by Mrs. Grasmick. The character reference letters and strong family support group are further testament to her lack of propensity for future criminal behavior. See 18 U.S.C. § 3553(a)(2)(B),(C)(absence of need in this case for specific deterrence and to protect public from further crimes of the defendant).

Finally, the conduct relevant to Mrs. Grasmick's plea was truly aberrational and, thus, not worthy of an incarcerative sentence. Specifically, of the more than 250 construction projects successfully completed by Mrs. Grasmick since forming her Company in 1996, only two (2) involved HUBZone contracts, only one of which (the COANG-RTI contract) is the subject of this criminal matter. Accordingly, for more than 20 years Mrs. Gramick has been a good corporate citizen and has performed and successful delivered on hundreds of  construction projects in an around the State of Colorado. Certainly, not many construction contractors can make that claim. That lengthy history of ethical business operations convincingly shows that her conduct which resulted in the guilty plea herein was truly aberrational.

**CONCLUSION**

Mrs. Grasmick is not now asking for and has never asked for special treatment. All she asks is for a fair sentence from this Court.  The law requires this Court to impose a sentence "sufficient but not greater that necessary" to fulfill the purpose of sentencing as outlined in the statute. Respectfully, as indicated by the recommendation of the Probation Office, the facts set forth in the PSIR, Mrs. Grasmick's Statement of Offense, the letters filed in support and the facts set forth herein, a sentence of 3 years' probation would be appropriate under the requisite sentencing factors. Certainly, any sentence of incarceration would be much "greater than necessary" in Mrs. Grasmick's case.

DATED this 10th  day of December, 2019.

Respectfully submitted,

*s/Kenneth M. Harmon*
Kenneth M. Harmon
Springer & Steinberg, P.C.
1600 Broadway, Suite 2100
Denver, Colorado 80202
Tel. No. (303) 861-2800
E-Mail:kharmon@springersteinberg.com

Paul E. Pelletier, Esq.
3500 Morningside Drive
Fairfax, VA. 22031
Tel. No. (202) 617-9151
E-Mail: pepelletier3@gmail.com

Counsel for Mary Catherine Grasmick

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of December 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send

electronic notification of such filing to all counsel of record.

                                        *s/Kenneth M. Harmon*
                                        Kenneth M. Harmon