IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00308-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MARY CATHERINE GRASMICK,**

    Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION BY DEFENDANT GRASMICK FOR DOWNWARD DEPARTURE FROM APPLICABLE SENTENCING GUIDELINE RANGE AND FOR SENTENCING VARIANCE [ECF NO. 26]**

---

A sentence of probation and a fine for years of contumacious behavior would be perceived by anyone observing these proceedings as a white-collar defendant paying money to avoid jail time.  Such a low sentence would undermine deterrence (other would-be government contractors looking to gain an unfair edge in their proposals could simply price a possible fine into their proposals as the "cost of doing business"); fail to account for the nature, circumstances, and seriousness of the offense; fail to provide just punishment; create unwarranted sentencing disparities with other obstruction defendants, and undermine respect for the law.  The United States of America by Jason R. Dunn, United States Attorney for the District of Colorado, through Bryan David Fields, Assistant United States Attorney, hereby files this response in opposition to Motion by Defendant Grasmick for Downward

1

Departure from Applicable Sentencing Guideline Range and for Sentencing Variance, ECF No. 26) (hereinafter the "Departure/Variance Motion").

## I. The Sentencing Guidelines Do Not Support a Departure

The defendant is not entitled to a departure under U.S.S.G. § 5K2.0(a)(2). The defendant's brief offers as potential bases for departure (1) the health issues facing her children, (2) the payment of a civil settlement, (3) possible debarment proceedings, (4) an assertion that the government suffered "no loss," (5) letters of support from friends and family, (6) an assertion that she has led a lifetime of law abidedness.  Departure/Variance Motion at 3. Not a single one of these bases is listed in Part K of the Guidelines.  In addition, the only case cited in support of a departure based on 5K2.0 is *United States v. Barnes*, 890 .3d 910 (10th Cir. 2018). However *Barnes* is silent on *departures*; *Barnes* stands for the general principle that judges have broad discretion to grant *variances* under 18 U.S.C. § 3553(a), which is a separate issue discussed in more detail below.  *See United States v. Atencio*, 476 F.3d 1099, 1102 n.1 (10th Cir. 2007) (overruled on other grounds by *Irizarry v. United States*, 553 U.S. 708 (2008) (explaining difference between departure and variance); *see also United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011) (noting that the distinction is not a mere formality because different standards apply).

    a. <u>Family medical tragedies do not warrant a departure here</u>

To the extent the Guidelines refer in any way to these six offered bases for a departure, they do so in ways that cut against it.  For example, § 5H1.6 advises that "family ties and responsibilities are not ordinarily relevant in determining whether

2

a departure may be warranted." Section 5H1.3 further advises that emotional conditions should be taken into consideration only when there are present in "an unusual degree and distinguish the case from the typical cases covered by the guidelines." While the law does not require judges to turn off their humanity, it does caution against emotional appeals (which are often incapable of being tethered to rational legal principles and cannot be quantified) that will create unfair sentencing disparities.

      Unfortunately, it is not unusual for families to suffer from medical tragedy. The defendant does not explain, or cite to any cases, that would present this case as so unusual as to warrant a departure. To the contrary, what is unusual here is that a defendant would enlist a daughter suffering from chronic depression to help advance a scheme designed to gain a dishonest advantage in the government bidding process. The same daughter whose chronic depression the defendant references as a potential bases for a departure — and whose suffering the government does not doubt — (1) was fraudulently represented to be a fulltime employee of MASS living in one of the economically disadvantaged areas designed as a HUBZone so that the defendant could falsely use her to claim HUBZone

status,[1] (2) was asked to sign fake backdated leases,[2] and (3) was brought into the scheme as the straw owner of a sham staffing company used by the defendant to manipulate her HUBZone numbers.[3] This is not the conduct of a person so distracted by the emotional toll of medical tragedy as to distinguish her culpability from others. It is the conduct of a person who intentionally and deliberately defrauded the government for years to get a dishonest advantage and then, when

---

[1] The government, like the defendant, will avoid detail and names in the pleading to protect privacy. In her brief, the defendant cites to the "detailed facts" regarding this daughter's medical history that were set forth in her statement of the offense attached to the PSR. ECF No. 18-3. The court should keep in mind that despite the medical problems described there (second full paragraph of page 3), the defendant fraudulently represented that her daughter was working forty hours a week for MASS, while living in a HUBZone, and while ostensibly serving as the CEO of a staffing company (all on top of a full course load at a University). *See* ECF No. 19, ¶¶62 – 68 (describing evidence that daughter was not in HUBZone and did not work requisite number of hours, despite representation by defendant to the contrary; ¶¶ 129 – 141 (describing sham staffing company).

[2] ECF no. 19¶¶ 119 – 127 (describing backdated lease); Exhibits 28 -36 (emails and attached lease); Exhibit 17 (describing statements of S.H.). Exhibit 36 is one of the backdated leases. The fact that it is backdated is apparent on its face: the lease is dated in 2009, but the lawdepot.com copyright is 2011. Furthermore, while the signature is notarized and dated on February 1, 2009, the notary (one of the defendant's employees) stamp contains an expiration date of March 26, 2013: if the document had really been signed on February 1, 2009 then it would have had the notary's *prior* expiration date because notary commissions in Colorado last for four years. Exhibit 109 (S.H. Notary application). The only reason to go to the trouble of creating a backdated lease with a fake notary stamp was to deceive the SBA and provide a venire of fraudulent legitimacy to paperwork ostensibly designed to prove that the defendant's daughter lived in a HUBZone in Pubelo over a hundred miles from the luxury apartment building she was applying to live in at the same time. Exhibit No. 48 (INV_00072054) (signed lease).

[3] ECF no. 19¶¶ 129 – 141 (describing sham staffing company); Exhibit 105, p. 108 (testimony that staffing company was MASS's only client), p. 110 (testimony regarding lack of memory over hiring decisions); Exhibit 78 (MASS_00019832) (describing use of staffing company to manipulate HUBZone numbers).

4

asked by federal agents about it, created fake entries in a document to cover it up.

The defendant also cites the health problems of her other daughter as the basis for a departure. But the last date identified in this description on page 4 of ECF No. 18-3 is 2009, which pre-dates by almost seven years the specific conduct that resulted in her guilty plea and corresponds with the start of the serious efforts to manipulate the HUBZone program documented in the defendant's emails. ECF No. 19, ¶¶ 7 – 19; Exhibit12 (sham lease dated 2009); Exhibit 14 (MOI of worker who stated that, despite the sham lease, he did not live at the defendant's office in 2009). No departure is warranted on the basis of the defendant's daughter's medical problems. *Cf. United States v. Rybicki*, 96 F.3d 754, 759 (4th Cir. 1996) (rejecting departure for highly decorated war veteran whose wife and son had medical problems); *United States v. Artim*, 944 F. Supp. 363, 366-67 (D.N.J. 1996) (refusing departure to defendant whose father and father-in-law died, whose wife and daughter were ill, and whose son was incarcerated).

    b. <u>The Defendant should not be able to buy a lower sentence by entering into a civil settlement.</u>

The law also does not permit the defendant to buy a lower sentence by paying a civil settlement entered into on the basis of the legal risks associated with her case. *See, e.g., United States v. Morgan*, 635 F. App'x 423, 444 (10th Cir. 2015) (reversing sentence, in part, based on procedural error in relying on such collateral consequences and citing numerous Courts of Appeals expressing a dim view of such rationales because they "impermissibly favor criminals . . . with privileged backgrounds"); *see also United States v. Bennett*, 60 F.3d 902, 905 (1st Cir. 1995)

5

(rejecting this as basis for a departure); *United States v. Cowden Gravel & Ready-Mix, Inc.*, 1994 WL 441831, *1 (Aug. 16, 1993) (not precedential); *United States v. Pennington*, 168 F.3d 1060, 1068 (3d Cir. 1999) (same); *United States v. Leon*, 2 F. Supp. 2d 592, 595 (D.N.J. 1998) (same). The court should reject any departure on this ground, which would undermine the respect for the law any sentence must promote under 18 U.S.C. § 3553(a).

    c. <u>Speculative collateral civil consequences are no basis for a departure</u>

Nor should the defendant be given a lower sentence because she faces the potential collateral civil consequences of her wrongdoing. *United States v. Reilly*, 33 F.3d 1396, 1424 (3d Cir. 1994) (rejecting such a basis for a departure); *see also United States v. Crouse*, 145 F. 3d 786, 791 (10th Cir. 1998) (noting that loss of a business after committing a fraud "should be an excepted consequence" and is not a proper basis for a departure). To give such a departure would be unfair. Business owners, as a class, should not receive lower sentences than, say, drug dealers who obstruct investigations simply because the former started off with the advantages of a business and face the possibility that criminal conduct will be bad for the bottom line. *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) ("The Sentencing Guidelines authorize no special sentencing discounts on account of economic or social status.").

Furthermore, even if debarment were a basis for a departure here, this consequence is speculative. If the defendant is not debarred, but the court uses that mere possibility as a basis for reducing here sentence, then the defendant will have

6

received a windfall that undermines general deterrence. Others could see the potential for crime to pay: a contractor could manipulate government programs to get an advantage, obstruct the investigation, argue for a lower sentence on the possibility of debarment, then fight debarment, pay the fine and pocket the difference between the fine and the contracts obtained as the profit. The criminal justice system should not encourage this outcome, which is contrary to 18 U.S.C. § 3533(a).

        d. <u>The defendant should not be rewarded for coming through on a contracting opportunity she stole from honest competitors</u>

The defendant's "no harm no foul" theory for a departure is similarly misguided. The Guideline here already takes into account that obstruction can result in no loss. The guideline has a base offense level and other specific characteristics that are unrelated to financial harm. Obstruction is a crime based on the structural and corrosive harms that arise when citizens show contempt for the law.[4] Furthermore, even if the *government* suffered no loss (and, as set forth below, this is not true) the defendant's *competitors* certainly did. They operated fairly and honestly and, as a result, were outbid by someone who did not play by the rules. The defendant lied to get a government benefit, used that benefit to give her an unfair advantage in bidding, and then obstructed the government's efforts to

---

[4] The Guideline Range in this case is a function of U.S.S.G. § 2J1.2, which focuses entirely on the penalty one should receive for *all* obstructive conduct without regard to the underlying crime obstructed. That is, someone who obstructs a bank robbery should get the same sentence as someone who obstructs a wire fraud, even if the bank's money is recovered and even if the fraudster makes full restitution, because the gravamen of the crime is disrespect for the law.

7

address the unfairness. She stole valuable opportunities from other companies that deserved the contracts.

The civil settlement does not "recognize that Grasmick's conduct in relation to the HUBZone resulted in *no* discernable loss to the government." Paragraph 12(b) of that settlement says "the United States contends that it has valid claims against MASS and Ms. Grasmick in the amount of $21,224,366." Nor is it "virtually unprecedented" that a defendant's criminal conduct results in "no loss." It is a well-known and ongoing problem with frauds involving defendants who lie to get qualified for a program that will boost the odds of a successful bid but then proceed to actually carry out the contract. *See, e.g., United States v. Crummy*, 249 F. Supp. 3d 475, 485 (D.D.C. 2017) (finding no loss in similar scheme involving contractor who lied to qualify for SBA program but then fulfilled resulting contracts).

The problem with granting a departure or a variance on this basis is, as set forth above, that it is inconsistent with the factors the court must consider under §3553(a): if contractors know that they can get an unfair advantage in federal contracting by falsely representing their status but that they can escape any jail time so long as they fulfill the contract, then contractors will have powerful incentives to manipulate the system. This outcome is inconsistent with any theory of deterrence or just punishment, respect for the law, and does not reflect the seriousness of the offense, all factors that the court must consider in fashioning a sentence. 18 U.S.C. § 3553(a).

Moreover, it is simply not true that there was no loss in this case. Loss

amount under the guidelines in these types of cases is the subject of deep disagreements across circuits and even within district courts. Compare *United States v. Singh*, 195 F. Supp. 3d 25, 29 (D.D.C. 2016) (finding that loss equals full value of awarded contracts and citing in support cases from 4th, 7th and 11th circuits) with *Crummy*, 249 F. Supp. 3d at 482 (finding no loss and citing cases from 5th and 9th Circuits).  It is unnecessary for the court to weigh in on this dispute one way or another:  the defendant's guideline range is not based on loss amount.  The issue instead, is whether a departure (or variance) is justified when the defendant made false representations to obtain an unfair bidding advantage.  She should not.

The defendant's false representations caused her to obtain a 10% pricing preference. As a result of that preference she was awarded an approximately $40 million contract to build the Colorado Army National Guard's Regional Training Institute ("COANG RTI") over others who submitted lower bids.  The government paid approximately $4million more dollars on the contract than it otherwise would have because it hoped to realize the benefits of the HUBZone program:  an injection of capital into economically disadvantages areas.  ECF No. 19, ¶¶ 184 – 191; Exhibit 100 (statement of contracting officer explaining that MASS received contract because of its HUBZone status).  The government paid a premium so that the defendant would employ people from these disadvantaged areas.  Instead, the defendant (1) put a daughter who lived in luxury housing several counties away on her payroll, (2) falsely represented that white-collar employees who lived in economically more affluent areas were actually HUBZoners.  The government lost.

So did the defendant's competitors. By manipulating the bidding process the defendant stole valuable opportunities away from others. She is not entitled to a departure.

      e. <u>The Defendant should not be able to cash in her considerable social capital for a lower sentence</u>

Letters from family and friends do not warrant a departure. A business owner who is able to use the economic advantages of that position — and who has profit-seeking incentives to ingratiate herself with potential customers, clients, and employees — should not be able to use this already-advantaged position to obtain a drastically lower sentence than someone who has no such advantages. That is, a hypothetical drug dealer who provided excel spreadsheets to an investigator about his deals should not get a higher sentence than this defendant simply because his socio-economic position did not lend itself to relationships with others in a position to write well-drafted and supportive letters. *See United States v. McClatchey*, 316 F.3d 1122, 1135 (10th Cir. 2003) (noting, in context of disfavored Guideline departure at U.S.S.G. § 5H1.11, that the Tenth Circuit expected district courts to view such good character references with skepticism in sentencing executives who commit white-collar offenses).

      f. <u>Aberrant Behavior / Law Abidedness</u>

The defendant cites U.S.S.G. § 5K2.20 in support of a departure for "aberrant behavior." But a defendant only qualifies for such a departure when she meets the requirements set forth in § 5K2.20(b). The guideline applies only where a defendant commits a "single criminal occurrence or single criminal transaction that

(1) was committed without significant planning, (2) was of limited duration, and (3) represents a marked deviation by the defendant from an otherwise law abiding life."

The defendant meets none of these criteria. Even the narrow stipulation of facts in the plea agreement rules it out. That stipulation notes that the defendant made false representations in 2011 to obtain the COANG RTI contract. ECF No. 16 ¶ 24. Then she took the time to plan out and create two spreadsheets with false information to send to investigating agents in 2016. ECF No. 16, ¶ 26. The crime did not involve a "single criminal transaction," required significant planning, and spanned several years.

A broader look at the relevant conduct set forth in the government's sentencing statement and elsewhere in this submission reinforces this conclusion. The defendant participated in a long-running scheme to fraudulently obtain HUBZone status that involved creating fake leases,[5] persuading employees to participate in criminal conduct (her office manager is pleading guilty to a felony after making the terrible mistake of doing what the defendant asked her to do),[6]

---

[5] In addition to the fake leases described above in footnote2 and in the first full paragraph on page 5, evidence shows that the defendant asked an office worker to enter into a sham lease with a friend so that she could fraudulently represent the office worker to be a HUBZone employee. Exhibit 107, p. 61 - 63 (testimony of S.H. regarding sham lease and that she did what she was told because she wanted to keep her job); Exhibit 90 (MASS_00019638-39) (sham lease submitted to SBA); Exhibit 63 (statement of landlord regarding sham lease).

[6] The case is *United States v. Petersen*, docketed at 19-cr-00354. She is scheduled to be sentenced on December 20, 2019 at 9:00. In her plea agreement, ECF No. 17 on that docket, Petersen admitted that the defendant asked her to sign a fake affidavit for submission to the Small Business Administration in 2012. *See also* Exhibits 84 – 89 (identifying emails and correspondence related to false

enlisting help from her chronically ill daughter, and lying to federal agents. This is not "aberrant behavior." This is, unfortunately, the usual profile of many white collar criminals in federal court who find themselves finally facing accountability for schemes that went undetected for years before being discovered by law enforcement. U.S.S.G. § 5K2.20 Application Note 2 ("[A] fraud scheme generally would not meet [the requirements of subsection (b)] because such a scheme usually involves repetitive acts, rather than a single occurrence of a single criminal transaction, and significant planning."

## II.  A Variance Would Undermine the Purposes of Criminal Sentencing Set Forth at 18 U.S.C. §3553(a).

The government incorporates here the arguments set forth in its Sentencing Statement, which explain why each of the § 3353(a) factors supports a Guideline sentence. ECF No. 20.

To the extent that the defendant's arguments for a departure are also arguments for a variance under § 3353(a) the government also incorporates here each of the arguments made about as to why the defendant should not receive a lower sentence.

In addition, the government submits that the defendant's request for a variance does not explain how any of proposed bases for such variance are supported by § 3553(a). To the contrary, many of these bases are expressly disfavored by the Tenth Circuit. *See Morgan*, 635 F.3d at 445 (describing Sixth

---

affidavits); Exhibit 17(statement of S.H. that she was asked to sign false affidavit).

Circuit's opinion related to lenient sentence for CPA in *United States v. Musgrave*, 761 F.3d 602, 604 (6th Cir. 2014) and noting that in reversing that sentence, "the Sixth Circuit saw it for what it was, favoritism of the elite"); *McClatchey*, 316 F.3d at 1135 (viewing character references with skepticism); *see also United States v. Boucher*, --- F.3d ---, 2019 WL 4252114, at *9 (6th Cir. Sept. 9, 2019) (reversing district court's lenient sentence against doctor as being substantively unreasonable); *United States v. Peppel*, 707 F.3d 627, 636 (6th Cir. 2013) (explaining that a lesser sentence based on "humiliation before his community, neighbors, and friends — would tend to support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along those lines.") (citation omitted); *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) ("The Sentencing Guidelines authorize no special sentencing discounts on account of economic or social status."); *United States v. D'Amico*, 496 F.3d 95, 107 (1st Cir. 2007) (explaining that lower sentences for white collar criminals contradicts purpose of Guidelines), *reversed on other grounds*, *D'Amico v. United States*, 522 U.S. 1173 (2008); *United States v. Della Rose*, 435 F.3d 735, 738 (7th Cir. 2006) ("Defendants accused of comparable frauds often have impressive records of civic and philanthropic accomplishments. These good deeds in no way lessen the harm suffered by the victims of their crimes, and in some ways they render the crimes themselves all the more puzzling and deplorable.").

## III.   CONCLUSION

The Guidelines reflect a "rough approximation" of sentences that will achieve

13

§ 3553(a)'s objectives. *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). A sentence of probation and a fine would be a grotesque distortion of them. The Defendant's request for a variance is a request to create a disparity between herself and others with the same Guidelines calculation. Substantial variances should be supported by substantial reasons, or else such a disparity becomes unwarranted and thus expressly contrary to one of the key purposes of federal sentencing. *Boucher*, 2019 WL 4252114, at *7. For the reasons set forth above, as well as for the reasons set forth in the Government's Sentencing Statement, ECF No. 20, the defendant is entitled to no departures under the guidelines and should not receive a variance. A lower-end sentence of a year and a day is sufficient, but not greater than necessary in this case.

Respectfully submitted this 13th day of December, 2019.

                                        JASON R. DUNN
                                        United States Attorney
                                        District of Colorado

                     By:    s/ *Bryan David Fields*
                           BRYAN DAVID FIELDS
                           Assistant United States Attorney
                           1801 California Street, Suite 1600
                           Denver, CO 80202
                           Telephone 303-454-0100
                           Facsimile 303-454-0402
                           Bryan.Fields3@usdoj.gov

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

        I certify that on this 13th day of December 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

        s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov