IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00308-DDD

UNITED STATES OF AMERICA,

  Plaintiff,

v.

1. **MARY CATHERINE GRASMICK,**

  Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT [ECF NO. 27]**

A probationary sentence would undermine, not advance, the goals of criminal sentencing set forth at 18 U.S.C. § 3553(a).  For the reasons set forth in the government's sentencing statement, ECF No. 20, the government's response to the defendant's motion for a departure or variance, ECF No. 29, and the additional reasons set forth below, the United States of America, by Jason R. Dunn, United States Attorney for the District of Colorado, through Bryan David Fields, Assistant United States attorney, hereby offers this response to the defendant's sentencing statement, ECF No. 27, submitting that a sentence of twelve months and a day is sufficient, but not greater than necessary, to satisfy those goals.

**I.   The Evidence Regarding the Defendant's Long-Running Fraud Scheme and Final Charged Act of Obstruction**

The government intends to submit at sentencing extensive materials supporting the allegations made in ECF No. 19 and in its sentencing statement,

1

ECF No. 20.  The materials include emails, spreadsheets, HUBZone submissions and other records showing the defendant's extensive seven-year effort to (1) manipulate her HUBZone numbers through the fraudulent transfer of employees from her business to her husband's, (2) obtain fake leases from employees (including her own daughter) to fraudulently misrepresent their addresses, (3) create payroll records falsely inflating the number of hours worked by employees, (4) create false affidavits for her employees to sign, (5) put up her daughter as the straw owner of a sham staffing company used to manipulate her HUBZone numbers, all to defraud federal agencies so that she could claim a dishonest advantage in government contracting.  As the government observed in its sentencing statement, the obstruction was simply the last step of an extensive criminal effort.

The government has provided these exhibits to defense counsel, who has represented that the defendant does not dispute the authenticity or content of the materials, only their relevance.  However federal statutes and the Rules of Evidence are clear that relevance is not a valid objection at a sentencing hearing.  18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Fed. R. Evid. 1101(d)(3) (noting that rules of evidence do not apply to sentencing); *see also United States v. Beaulieu,* 893 F.2d 1177, 1180 (10th Cir. 1990); *see also United States v. McBrayer,* 546 F. App'x 803, 805 (10th Cir. 2013) ("the district court could consider the police reports during sentencing, as hearsay

2

evidence may be considered if it bears a minimal indicia of reliability . . . ." and the district court gave such reports, which "alleged unadjudicated conduct . . . their proper weight in evaluating Mr. McBrayer's risk to public safety"); *United States v. Marsh,* 486 F.Supp. 2d 150, 156 (D. Mass. 2007) ("disregarding reliable information from police reports would run directly contrary to both 18 U.S.C. § 3661 and its guideline counterpart [U.S.S.G.] § 1B1.4," and it "would be anomalous, indeed, if during the sentencing process the Court could consider self-serving and often unverifiable information from a defendant (for example, statements concerning childhood abuse or trauma), but not an official record from a law enforcement agency concerning conduct that led directly to a criminal charge (and conviction, albeit later vacated)").

There is good reason to consider all of this material. The law requires the Court to consider extremely difficult questions as part of the sentencing process. What were the nature and circumstances surrounding the crime? What kind of sentence will reflect the seriousness of the offense? What kind of sentence will ensure respect for the law? The Court can only adequately answer these questions if it receives information about the full extent of the defendant's conduct. This is especially true when the defendant intends to submit voluminous letters and documents related to her history and characteristics: considering the latter, but not the former, would create a cropped view of this case that is inconsistent with the many factors the court must consider under 18 U.S.C. § 3553(a). Furthermore, as set forth below, the material has a direct bearing on several assertions made in the

defendant's sentencing statement.

## II. The Defendant's History and Characteristics Do Not Warrant a Variant Sentence of Probation

Section 3553(a) requires that the Court take into consideration the history and characteristics of the defendant.  The government agrees that doing so here warrants a lesser sentence than might otherwise be the case:  the commendable fact that the defendant worked hard to start her business, that she provides care and support for her family, and that — outside her dealings with the government — she had been law abiding, are all reasons supporting a sentence at the lower, rather than the higher end of the guidelines.

However, using this one factor to dramatically vary downward so that a defendant who is otherwise recommended for prison receives mere probation is inconsistent with other factors.  The defendant's sentencing statement does not address at all how such a sentence would support deterrence, promote respect for the law, or be consistent with the nature and circumstances of this crime.  A probationary sentence would undermine each of these factors, for the reasons set forth in the government's sentencing statement and response to the defendant's motion for a variance.  ECF Nos. 20 and 29.

In addition, while the government is persuaded that the defendant's history and characteristics warrant a somewhat lesser sentence than would otherwise be the case, it is an exaggeration to say that the defendant has been a "lifetime example of good character."  She brought her own daughter into a criminal scheme.  ECF No. 29, p. 3-4 & n. 1-3.  She put one of her key employees in an unfair and

4

untenable position by asking her to help her carry out the obstruction — a decision that led to the employee's criminal conviction. *See United States v. Angela Petersen*, 19-cr-00354-RM, ECF No. 17 (Sept. 27, 2019) (plea agreement). She asked another employee to falsely notarize backdated documents and submit false affidavits. ECF No. 29, p. 4 n.2. Even after submitting false affidavits to agents she continued to make false statements to the government in an effort to avoid accountability. Compelled to testify under oath as part of the civil proceedings in this case she falsely stated that MASS had no relationship to BAHA, her husband's business (the two shared office staff and had other employee overlap) and continued to peddle the falsehood that her sick daughter was actually running a staffing company whiel working full time for MASS, attending classes, and living over a hundred miles away from Pueblo. Compare Exhibit 106, p. 20 (testimony from defendant under oath stating there is no relationship between BAHA and her company) with Exhibits 3-5 (describing use of BAHA to manipulate HUBZone numbers); Compare Exhibit 106, p. 199 (testimony of Grasmick describing staffing company) with Exhibit 105, p. 108 (testimony that staffing company was MASS's only client), p. 110 (testimony regarding lack of memory over hiring decisions); Exhibits 69-78 (showing company's operations being directed by defendant's office manager) and ECF No. 18-3, p.3 (describing serious health problems in same time frame as daughter was purportedly creating staffing company). Nothing about this conduct warrants a variant sentence.

### III.     The Defendant's Crime was Serious

One of the § 3553(a) factors is the seriousness of the offense.  Page 7 of the defendant's submission asserts in bold that the defendant's extensive efforts to fraudulently obtain HUBZone status were irrelevant because "the selection result would have been the same even without application of the HUBZone evaluation preference."  This is not true.  A review of the other bids and the source selection materials (which will be presented at sentencing) shows that several other companies were able to provide the same services for millions of dollars less. *See* ECF No. 19, ¶¶ 184 – 191 (citing supporting documents); Exhibits 97-101.  The defendant's company won the bid because it received a 10% pricing preference as a result of its fraudulently-obtained HUBZone status.  As set forth in the memorandum documenting his interview (one of the exhibits the government will present at sentencing), the assigned contracting officer told the government that the HUBZone preference allowed MASS to "jump to the front of the line of competing competitors" and that, without the HUBZone preference, MASS "would have been last amongst the bidders."  Exhibit 100.

Furthermore, the very fact that the defendant went to such great lengths to obtain HUBZone status, and then hid from the government evidence that she did not qualify, undermines efforts to belittle her offense. If HUBZone status really mattered so little, why would the defendant put her business and reputation on the line to obtain it?  The fact of the matter is that HUBZone status was valuable because it gave the defendant an advantage in bidding and because it allowed her to

6

obtain "set aside" contracts not available to others.

By fraudulently obtaining HUBZone status the defendant received a subsidy designed to go to companies employing people from economically disadvantaged areas.  She stole from the government the opportunity to use its resources to advance that goal. The government wanted buy services from a company hiring employees from impoverished areas. What it bought instead were services from a dishonest business owner who fraudulently represented that her daughter — suffering from a variety of ailments and living in luxury housing far away from Pueblo while attending school full time[1] — was a HUBZoner working full-time for the company, who fraudulently represented that her HUBZone-residing personal housekeepers worked for her company for an inflated number of hours every week,[2] and who used her position to corruptly manipulate several of her employees into helping her commit the crime.[3] This is serious obstructive conduct that warrants a

---

[1] Exhibit 44 contains records confirming her status as a full time student. Exhibits 45 through 54 show that she was not living in a HUBZone; payroll summaries submitted to the SBA in Exhibits 18 (MASS_00000083), 19 (MASS_00000435, p. 220); 90 (MASS_000019564) also claim that she was working forty hours a week).

[2] Exhibit 38 is the memorandum documenting the interview with these employees, who said they only worked about 2-4 hours a week; Exhibits 39 and 40 are the applications in which those same employees explain that they have full time jobs and can work only 4 hours per week; and Exhibit 26, p. 11 and Exhibit 19, p. 152-155 and 177-180 contain submissions to the SBA in which the defendant included payroll summaries falsely representing that these employees worked 12 hours in one week (putting them over the necessary threshold to qualify for HUBZone status).

[3] This is described in the government's response to the motion for a variance, ECF No. 29, p. 11, n. 2 & 3.

Guideline Sentence.

### IV. The Defendant Should Not Get a White Collar Discount on Her Sentence

The defendant's submission argues for probation in part based on the facts that she paid a civil settlement, may be subject to debarment, and is suffering financially. However, there is no support for the position that business owners should receive lesser sentences when the discovery of their frauds causes business hardships, because they face the predictable civil consequences of dishonest behavior, because their positions give them an opportunity to develop relationships with people who will write supportive letters, or because the shame of the crime is an adequate substitute for criminal punishment. *See* Gov't Sentencing Statement, ECF No. 29 (citing cases explaining why variances on these grounds are improper); *see also United States v. Della Rose*, 435 F.3d 735, 738 (7th Cir. 2006) ("Defendants accused of comparable frauds often have impressive records of civic and philanthropic accomplishments. These good deeds in no way lessen the harm suffered by the victims of their crimes, and in some ways they render the crimes themselves all the more puzzling and deplorable.").

Section 3553(a)(2) directs courts to consider "the need for the *sentence* imposed" to meet a number of goals. The financial, reputational, and professional harms cited by Defendant are not her *sentence*. Nor are they consequences of the sentence (they would be present even if no criminal charges had been filed). Relying upon them to meet goals laid out at § 3553(a)(2) is thus improper. *See*, *e.g.*, *United States v. Morgan*, 635 Fed. App'x 423, 445-46 (10th Cir. 2015); *United States v. Musgrave*, 761

8

F.3d 602, 608 (6th Cir. 2014) (quoting *United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012)); *United States v. Cutler*, 520 F.3d 136, 171 (2d Cir. 2008). More than running afoul of the statutory text, crediting these arguments raises more fundamental concerns: it has the doubly perverse effect of favoring privileged offenders who, by virtue of the very privilege they bemoan losing, are arguably *more* culpable:

> It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight our nature. Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

*United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999) (citation omitted). *See also United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012) ("It is impermissible for a court to impose a lighter sentence on white-collar defendants than on blue-collar defendants because it reasons that white-collar defendants suffer greater reputational harm or have more to lose by conviction."); *United States v. Barbera*, 2005 WL 2709112, at *13 (S.D.N.Y. Oct. 21, 2005) ("high regard in which he is evidently held by the colleagues and friends who have written letters on his behalf does not distinguish him from other white-collar criminals").

I.  **CONCLUSION**

For the reasons set forth above, in the government's sentencing statement, ECF No. 20, and in the government's response to the defendant's motion for a departure or a variance, ECF No. 29, a sentence of one year and a day is a just outcome in this case that satisfies § 3553(a)'s command that sentences be sufficient,

but not greater than necessary, to promote the manifold goals of criminal justice.

Respectfully submitted this 13th day of December, 2019.

        JASON R. DUNN
        United States Attorney
        District of Colorado

By:   s/ *Bryan David Fields*
        BRYAN DAVID FIELDS
        Assistant United States Attorney
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Bryan.Fields3@usdoj.gov

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

        I certify that on this 13th day of December 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

        s/ *Bryan David Fields*
        BRYAN DAVID FIELDS
        Assistant United States Attorney
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone 303-454-0100
        Facsimile 303-454-0402
        Bryan.Fields3@usdoj.gov